UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| REBECA H. VALTIERRA, | No. ED CV 17-2241-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 2, 2017, seeking review of the Commissioner's[1] denial of her application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on December 5, 2017, and December 8, 2017.

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on August 20, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born on May 14, 1958. [Administrative Record ("AR") at 55, 216.] She has past relevant work experience as a sales clerk. [AR at 43, 66.]

On July 12, 2013, plaintiff filed an application for SSI payments, alleging that she has been unable to work since May 15, 2013. [AR at 37, 216-21.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 127.] A hearing was held on October 22, 2015, at which time plaintiff appeared without the assistance of an attorney or other representative, and the ALJ continued the hearing in order to obtain additional medical records. [AR at 73-89.] A supplemental hearing was held on May 10, 2016, at which time plaintiff again appeared without the assistance of an attorney or other representative, and testified on her own behalf, with the assistance of an interpreter. [AR at 49-72.] A vocational expert ("VE") [AR at 65-71], and plaintiff's family friend, Frankie Villarreal, also testified. [AR at 62-65.] On May 24, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability since July 12, 2013, the date the application was filed. [AR at 37-44.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 213-15.] When the Appeals Council denied plaintiff's request for review on September 20, 2017 [AR at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 12, 2013, the application date. [AR at 39.] At step two, the ALJ concluded that plaintiff has the severe impairments of disorder of the spine; disorder of the right shoulder, status post-surgery; and obesity. [Id.] She found plaintiff's medically determinable impairment of hypertension to be

4

nonsevere. [AR at 39-40.] She also determined that there was a lack of objective evidence to substantiate plaintiff's "alleged symptoms of trouble concentrating." [AR at 40.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform less than a light level of work as defined in 20 C.F.R. § 416.967(b),[3] as follows:

> [She] can lift and carry 20 pounds occasionally and 10 pounds frequently. Pushing and pulling can be done within these weight limits. [Plaintiff] can stand and walk for 6 hours in an 8-hour period. [She] can sit for 6 hours in an 8-hour period. [She] cannot climb ladders, ropes or scaffolds. She cannot work around hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles. She can occasionally perform overhead reaching with the right upper extremity; however, shoulder level reaching is not limited. She cannot forcefully grip or grasp. [She] has average communication skills that are vocationally related.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a sales clerk.[4] [AR at 43.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since July 12, 2013, the date the application was filed. [AR at 44.]

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[4] The record reflects that plaintiff's past relevant work as a sales clerk at Mervyn's was part-time work, at twenty hours a week. [AR at 69, 283.] Part-time work may be considered substantial work activity. 20 C.F.R. § 416.972(a).

5

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she: (1) failed to properly consider and evaluate medical evidence of record supportive of plaintiff's claim of disability, specifically the objective examination findings and reports prepared by plaintiff's orthopedic surgeon, Jack Akmakjian, M.D.; and (2) rejected plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.  MEDICAL OPINIONS

### 1.  Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 416.902, 416.927.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d

---

[5] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 416.920c (not § 416.927) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 416.920c. However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 416.927 (the evaluation of opinion evidence for claims filed prior to March 27, 2017). If appropriate, 20 C.F.R. § 416.920c shall apply on remand.

1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling ("SSR")[6] 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions and findings of plaintiff's treating orthopedic surgeon, Dr. Akmakjian. [JS at 4-8.] Defendant responds that the ALJ reviewed all of Dr. Akmakjian's treatment records, as well as the 2014 consultative examination conducted by Payam Moazzaz, M.D. and, in giving significant weight to Dr. Moazzaz's opinions, she properly resolved the conflicts in the medical evidence and ambiguities in the record; therefore, defendant submits, the RFC determination was supported by substantial evidence. [JS at 8-15.]

**2.  Analysis**

On April 13, 2014, Payam Moazzaz, M.D., a Board-certified orthopedic surgeon, conducted a consultative orthopedic evaluation of plaintiff. [AR at 358-62.] In addition to his own examination results, Dr. Moazzaz reviewed a November 13, 2010, orthopedic evaluation that reflected "moderate narrowing and degeneration at L4-L5 and L5-S1 with associated anterior spurring and facet disease," and a May 21, 2013, evaluation that documented chronic low back pain; bilateral lumbar radiculopathies; right shoulder impingement syndrome, status post-right shoulder arthroscopic surgery; and a recommendation for a lumbar epidural steroid injection. [AR at 358.] With respect to plaintiff's "station and gait," Dr. Moazzaz noted that plaintiff "relates with a greatly decreased cadence and velocity and state[d] she is unable to heel walk, toe walk, or squat." [AR at 359.] He noted "poor effort throughout the examination." [Id.] He determined that plaintiff's range of motion of her shoulders was within normal limits and, with respect to her thoracolumbar spine examination, he found mild tenderness to palpation in the paraspinal musculature, no muscle spasm, pain reported with range of motion, and "poor effort with range of motion testing." [AR at 360.] The straight leg raising test results were negative bilaterally. [Id.] Plaintiff also was unable to grip with her left hand. [AR at 361.] Dr. Moazzaz diagnosed plaintiff with lumbar spondylosis, and opined that she can perform a range of light work, with occasional postural activities such as bending, kneeling, stooping, crawling, and crouching. [AR at 361, 362.] He also

noted that plaintiff can perform overhead activities "on an unrestricted basis," has full use of her hands for fine and gross manipulative movements, and does not require the use of an assistive ambulatory device. [AR at 362.]

Most recently, plaintiff's treating orthopedic surgeon, Dr. Akmakjian, examined plaintiff on October 13, 2015, as well as on numerous other occasions between 2012 and October 2015. [AR at 413-14.] Dr. Akmakjian's October 2015 examination revealed muscle spasm in the lumbar spine with painful and limited range of motion, along with positive straight leg raising test results bilaterally -- "on the left to 60 degrees, 70 degrees on the right." [AR at 413.] He also noted that sensation was "decreased at L5 on the left." [Id.] Dr. Akmakjian stated that plaintiff "suffers from low back pain and lumbar radicular pain to the leg. The cause of the radicular pain is due to lumbar spinal stenosis as established by imaging studies, history, and physical examination. [Plaintiff] has failed conservative treatment, measures of oral medications, activity modification, physical therapy and prolonged rest." [AR at 414.] He requested authorization for a "lumbar epidural steroid injection series," and for electromyography ("EMG") and nerve conduction velocity ("NCV") tests of the bilateral lower extremities. [Id.] Plaintiff submits that Dr. Akmakjian's findings and opinions are supported by an October 8, 2015, MRI, which, at L4-L5 documented a 5 mm posterior disc protrusion with an annular tear; acquired canal stenosis and bilateral acquired foraminal stenosis; compromise of the exiting nerve roots bilaterally; compromise of the traversing nerve roots; and a 50% decrease in the height of the disc. [AR at 421.] At L5-S1 the MRI documented a 50% decrease in the height of the disc; a 4-5 mm posterior disc protrusion with encroachment on the epidural fat and foramina bilaterally; compromise of the exiting nerve roots bilaterally; and "increased signal in posterior paravertebral musculature at L4, L5 and S1 consistent with fatty change and hence atrophy." [Id.]

Summarizing the medical records, the ALJ noted that plaintiff had received medical care from Dr. Akmakjian related to plaintiff's worker's compensation injury in 1997, and that in October 2012 she had reported pain across her right shoulder and across her lower back with radicular pain in both legs. [AR at 42 (citations omitted).] She also noted that plaintiff had been "previously declared permanent and stationary with diagnosis of chronic low back pain, bilateral lumbar

radiculitis, right shoulder impingement syndrome, and status post right shoulder arthroscopic surgery." [Id. (citations omitted).] The ALJ noted that in January 2013 plaintiff reported to Dr. Akmakjian that her trigger point injection had helped her symptoms; in May 2013 plaintiff reported trouble sleeping due to pain and had visited the emergency room because of increased lower back and leg pain, and Dr. Akmakjian recommended continued injections due to plaintiff's reported benefits from them; and in January 2014 plaintiff reported that her low back pain was better from the last visit and that "the injections really helped." [AR at 42 (citing AR at 335, 340-41, 349).] The ALJ further mentioned that the October 2015 MRI results reflected mild scoliosis and posterior disc protrusions, and that a November 2015 treatment note indicated plaintiff "would need lumbar fusion surgery and a cane." [AR at 42 (citing AR at 422, 373).] The ALJ then noted, however, that in January 2016 "*only* a request for transportation for EMG/NCV and future appointments was recommended." [Id. (citing AR at 368) (emphasis added).] Finally, the ALJ observed that in April 2015 Dr. Akmakjian stated that "without medications, [plaintiff's] pain was severe and she was bedridden; she had fallen a lot," but that "with medications, [her] pain decreased and she reported that she could function better, could walk, sit, cook, clean, do laundry and take care of her grandkids." [Id. (citing AR at 473).] The ALJ also pointed out that it "was reported multiple times in 2015 and in September 2015" that "with medications [plaintiff] had good analgesia, she is functionally improved, she shows no signs of aberrant behavior, and she has no significant side effects." [Id. (citing AR at 373).]

The ALJ gave "significant weight, but not full weight," to Dr. Moazzaz's opinions, and to the November 14, 2013, and April 21, 2014, opinions of the state agency medical consultants on review and reconsideration. [AR at 43 (citations omitted).] She specifically noted the following:

> The opinions of all of these physicians are generally consistent in that they all assess [plaintiff] is able to perform a range of work at the light exertional level with some differences in the degree of specific function-by-function limitations. These opinions are all generally supported by the record as a whole. However, no single assessment has been completely adopted as the [RFC] determined herein. Instead, the undersigned has adopted those specific restrictions on a function-by-function

basis that are best supported by the objective evidence as a whole.[7]

[Id. (citations omitted).] Plaintiff argues that the ALJ never specifically stated her reasons for rejecting the opinions and findings of Dr. Akmakjian. [JS at 6.] Indeed, plaintiff notes that "[n]owhere in her unfavorable decision has the [ALJ] discussed or provided any rationale whatsoever addressing the clear and obvious inconsistencies between the objective findings of Defendant's consultative examiner in April of 2014 and the findings of the treating orthopedic surgeon . . . on October 13, 2015." [Id.] Plaintiff states that assuming the consultative examiner's findings are believed, it is evident that plaintiff's condition "substantially worsened between the dates of the consultative examiner's report and the [October] examination" by Dr. Akmakjian. [Id.] She argues that this was error "since the orthopedist [sic] report and findings are supportive" of plaintiff's complaints and limitations. [Id.] Plaintiff submits, therefore, that the ALJ erred because she provided no specific and legitimate reason for refusing to give any weight to Dr. Akmakjian's findings and opinions. [Id.]

The Court agrees with plaintiff. The ALJ's finding that the opinions of Dr. Moazzaz and the state agency reviewers were "generally supported by the record as a whole," completely ignores the fact that those findings were not supported by *any* **treating** medical record before or after Dr. Moazzaz's April 2014 report. Simply noting Dr. Akmakjian's findings between 2012 and October 2015, and the clinical testing results -- such as the October 2015 MRI -- that support plaintiff's complaints and limitations, but then implicitly rejecting those findings and opinions in favor of the 2014 opinions of the one-time consultative examiner and the reviewing examiners, does not constitute a "specific and legitimate" reason supported by substantial evidence to discount Dr. Akmakjian's longitudinal findings and opinions. Additionally, although the ALJ suggested that plaintiff's "allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date" of May 15, 2013 [AR at 43 (citing AR at 348 (a January 13, 2013,

---

[7] For instance, although the state agency reviewing consultants both found that plaintiff was limited in her ability to reach overhead with her right upper extremity due to previous shoulder arthroscopy and cervical disc degeneration [see, e.g., AR at 97, 113], Dr. Moazzaz found no such limitation. Nevertheless, the ALJ included a limitation to occasional overhead reaching in plaintiff's RFC.

treatment note))], she did not explain how this purported "same level of severity" in any way *detracted* from Dr. Akmakjian's findings and recommendations. In fact, the January 13, 2013, treatment note cited to by the ALJ, which reflected plaintiff's condition prior to the alleged onset date as well as the application date, demonstrated that plaintiff had pain across the right shoulder, pain across the lower back with radicular pain into both legs, and that she had reported that her pain had "significantly worsened." [AR at 348.] The examination on that date revealed moderate to severe pain across the lower back radiating into both legs; restricted range of motion of the lumbar spine due to spasm and pain; positive straight leg raising bilaterally, with the left at 70 degrees and the right at 80 degrees; and numbness and tingling across the L5 distribution bilaterally, left greater than the right. [AR at 348-49.] Also on that date, Dr. Akmakjian ordered an MRI study of the lumbar spine and the right shoulder; prescribed narcotic pain medication; stated that plaintiff needed an EMG/nerve conduction study of both legs; and gave plaintiff a trigger point injection because the last one she had received had "helped." [AR at 349.]

A review of Dr. Akmakjian's subsequent treating records reflects some changes in these 2013 findings -- but rarely for the better. For instance, a May 21, 2013, treatment report noted that plaintiff's pain had "significantly worsened"; plaintiff reported continued pain in her right shoulder and low back, as well as trouble sleeping due to the pain; she reported that the "[l]ow back and leg pain are killing her"; and she went to the emergency room as she could not walk. [AR at 340.] That examination reflected "spasm, painful range of motion, [and] limited range of motion," and positive straight leg raising bilaterally. [Id.] Dr. Akmakjian ordered a lumbar corset and a TENS unit, and gave plaintiff another trigger point injection. [AR at 341.] He again noted that he had requested authorization for a lumbar epidural steroid injection series, as plaintiff's radicular pain, confirmed by imaging studies, history, and physical examination, had "failed conservative treatment measures of oral medications, activity modification, physical therapy and prolonged rest" -- a statement he repeated in most of his subsequent treatment notes. [Id.] A January 14, 2014, treatment report (3 months before Dr. Moazzaz's examination) indicated deterioration in plaintiff's straight leg raising to 60 degrees on the left and 70 degrees on the right; right leg pain; and renewed authorization requests for an EMG/NCV of the bilateral lower extremities, and a lumbar

epidural series of injections. [AR at 336.] Plaintiff again reported that the trigger point injections "really helped," and Dr. Akmakjian stated plaintiff's prognosis "is poor," she may need "L4-5 fusion," and she "cannot walk more than 50 feet without experiencing pain." [Id.] In May 2014 (one month after Dr. Moazzaz's examination), plaintiff reported an increase in her pain to 7/10 in her lower back, and stated that her right shoulder pain remained the same at 5/10; examination revealed lumbar spasm and painful and limited range of motion; positive straight leg raising test results; and right leg pain, "severe at times." [AR at 397.] Dr. Akmakjian again stated that plaintiff's prognosis "is poor," she may need "L4-5 fusion," and she "cannot walk more than 50 feet without experiencing pain." [AR at 398.] On October 7, 2014, Dr. Akmakjian reported that plaintiff had "increased pain in the low back and legs," and that her "legs go numb and she loses her balance." [AR at 386.] In addition to the positive straight leg raising test results, he also noted "[m]otor weakness at 4/5 bilaterally at quads."[8] [Id.] On June 16, 2015, plaintiff reported continued low back and leg pain at 8/10 without medications and 4/10 with medications; examination revealed lumbar spasm, painful and limited range of motion, positive straight leg raising test bilaterally, and decreased sensation on the left at L5. [AR at 407.] Dr. Akmakjian again noted his requests for authorization for EMG/NCV and a lumbar epidural injection series,[9] and stated that without medication, plaintiff's pain is severe and she is bedridden and has fallen a lot. [AR at 408.] He further observed that with medication, plaintiff's "pain decreases and [she] can function better, can walk, sit, cook, clean, do laundry, and take care of grandkids." [Id.] He did not, however, provide any information as to the extent to which she could perform any of these functions, but he did indicate that her condition remained "permanent and stationary."[10] [AR at 409.] That plaintiff

---

[8] This motor weakness was also noted in Dr. Akmakjian's August 5, 2014, and January 20, 2015, treatment notes. [AR at 381, 390.]

[9] Plaintiff testified that approximately three months prior to the May 10, 2016, hearing, she had received an epidural injection. [AR at 58.]

[10] In the worker's compensation field, "permanent and stationary" means that the medical condition has reached its maximum medical improvement and is unlikely to change. See Meter v. Berryhill, 2018 WL 437490, at *1 n.2 (C.D. Cal. Jan. 12, 2018); 8 Cal. Code Regs. § 10152. In
(continued...)

13

was "better" able to perform some of these activities is not indicative that she is capable of performing "what is required of substantial gainful work" for "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Indeed, the amount of involvement plaintiff described in these activities was minimal, and the ALJ's conclusory statement that Dr. Akmakjian's records reflected that plaintiff "could function better" and perform such tasks as cooking, cleaning, laundry, walking, and sitting, is not a sufficient reason to discount Dr. Akmakjian's treating records.[11] [See AR at 42, 70, 273-80.] And, despite Dr. Akmakjian's observation that plaintiff can "function better," on October 13, 2015, he again reported most of the same clinical findings as reported in his June 2015 report, and also noted that he was going to request an MRI of the lumbar spine. [AR at 414.]

The ALJ also seems to imply that Dr. Akmakjian found that plaintiff's condition had improved at the end of 2015 because in his November 2015 treatment note he had indicated that plaintiff "would need lumbar fusion surgery and a cane," while in his January 2016 treatment note "only a request for transportation for EMG/NCV and future appointments was recommended." [AR at 42, 367, 368.] However, this conclusion is misleading for several reasons. First, the January 2016 treatment note also reflected that lumbar epidural steroid injections also had again been recommended and requested. [AR at 42, 367, 368.] Additionally, although Dr. Akmakjian's

---

[10](...continued)
his October 16, 2012, treatment report (which is the earliest of his reports in the Administrative Record), Dr. Akmakjian had stated at that time that plaintiff's disability status "remains permanent and stationary." [See AR at 355.]

[11] The ALJ also noted that "some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment," and that plaintiff's "ability to participate in such activities diminishes the persuasiveness of [her] allegations of functional limitations." [AR at 42-43.] The ALJ did not elaborate any further as to how any of these activities are similar to those necessary for obtaining and maintaining employment, or for regularly completing an eight-hour workday. Neither did she find that plaintiff spent a substantial part of her day performing those activities. See Orn v. Astrue, 495 F.3d 635, 639 (9th Cir. 2007) ("[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'"). In short, these conclusory statements are insufficient to discount either Dr. Akmakjian's findings or plaintiff's subjective symptom complaints.

1 January 2016 treatment note did not reflect his belief -- stated two months previously -- that plaintiff would need lumbar fusion surgery going forward, it also did not state that he believed that she was no longer a candidate for surgery at some point in the future.

Finally, in not giving Dr. Akmakjian's findings controlling weight, the ALJ also failed to weigh Dr. Akmakjian's findings according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether his opinion is supported by and consistent with the record, and his area of specialization. See Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). Dr. Akmakjian treated plaintiff every few months for approximately five years, is a Board-certified orthopedic surgeon, and the ALJ did not point to any evidence demonstrating that Dr. Akmakjian's opinions were not supported by his clinical findings and examinations, or that Dr. Moazzaz's one-time snapshot examination of plaintiff should be given controlling weight over that of plaintiff's treating orthopedic surgeon.

Because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Akmakjian's findings, remand is warranted on this issue.

## B. SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that none of the reasons provided by the ALJ for discounting her subjective symptom testimony is clear and convincing, and defendant counters those arguments. Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also reconsider on remand, pursuant to SSR 16-3p,[12] plaintiff's subjective symptom testimony and, based on her reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Trevizo, 871 F.3d at 678

---

[12] The Ninth Circuit in Trevizo noted that SSR 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 687 n.5 (citing SSR 16-3p). Thus, SSR 16-3p shall apply on remand.

n.5; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting her non-credibility determination).

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the findings and conclusions of Dr. Akmakjian, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Akmakjian. The ALJ must provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Third, based on her reevaluation of the entire medical record and plaintiff's subjective symptom testimony, the ALJ shall determine plaintiff's RFC and determine,

at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a sales clerk. If plaintiff is not so capable or, if applicable, the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform. See <u>Shaibi v. Berryhill</u>, 870 F.3d 874, 882-83 (9th Cir. 2017).

## VII.
## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 11, 2018

_/s/ Paul L. Abrams_
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE